**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Eugene SMITH,**
**Defendant–Appellant.**

No. 90–3426.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 27, 1990.
Decided March 22, 1991.

Robert A. Behlen, Jr. (argued), Asst. U.S. Atty., Office of U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

John A. Bell (argued), Cincinnati, Ohio, for defendant-appellant.

Before MARTIN and JONES, Circuit Judges, and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

Michael E. Smith appeals a judgment entered upon a jury verdict of guilty on all four counts of an indictment charging him with making threats against the President and Vice President of the United States in violation of 18 U.S.C. § 871 (counts 1 and 2), and with making threats against a federal officer, 18 U.S.C. § 115 (counts 3 and 4). In his direct appeal Smith has raised six different grounds for reversal: (1) that the trial court erred in failing to acquit him of the charges because the proofs failed to substantiate that he had any intention actually of harming the individuals named therein; (2) that the trial court erred in failing to acquit him because the language of the letters which were employed to prove the threats could not as a matter of law be taken as such but instead were

merely expressions of the personal feelings of the defendant; (3) that he was denied a fair trial because of the prosecution's improper introduction of evidence concerning his alcoholism and other statements he had made earlier concerning the persons involved and before delivery of the letters which actually brought about his prosecution; (4) that the trial court erred in failing to give his proffered instruction concerning the requisite state of ·mind and intent necessary to his conviction; (5) that the trial court committed reversible error by its intemperate remarks made in criticism of defense counsel both in and out of the presence of the jury; and (6) that the trial court erred in failing to state reasons for its sentencing decision.

■■■ We have little difficulty in affirming the judgment of the district court with respect to the first four assignments of error raised by Smith. The evidence was fully sufficient to warrant submission to the jury on the question of whether Smith was guilty of each of the four counts relating to threats made against the President, Vice President and against the federal officers involved. *United States v. Vincent,* 681 F.2d 462, 464 (6th Cir.1982) (defendant may be convicted of threatening the President even if he does not harbor an actual, subjective intent to carry out his threat). The facts in *Vincent* were very similar to those present here, and we set a standard under 18 U.S.C. § 115 which does not require that an actual subjective intent to carry out the threat be present. That was the standard and remains the standard. We have also reviewed the trial court's instructions to the jury and find them to be correct and to embody substantially the substance of defendant's request to charge No. 15, to the extent it was legally required. The trial judge was not obliged to adopt the precise language sought by Mr. Smith or his counsel. *United States v. Townsend,* 796 F.2d 158, 163 (6th Cir.1986).

■■■ Likewise we find no merit in Smith's sixth claim of error. Under the provisions of 18 U.S.C. § 3553(c) it is required that the district court "shall state in open court the reasons for its imposition of

the particular sentence, and if the sentence: (1) is of the kind, and within the range, described in subsection (a)(4) *and that range exceeds 24 months,* the reason for imposing a sentence at a particular point within the range; ...." (emphasis added). We find the trial judge's comments in this respect at least minimally sufficient. He was not required to be more particular with respect to the reason for imposing sentence at a particular point within the range since the guideline range for the offenses, being between 63 and 78 months, did not exceed 24 months. Under existing case law the trial judge was not required to be more specific. See *United States v. Duque,* 883 F.2d 43, 45 (6th Cir.1989); *United States v. Howard,* 894 F.2d 1085, 1092 (9th Cir.1990); *United States v. Zine,* 906 F.2d 776, 779 (D.C.Cir.1990).

■■■ Issue No. 5, however, has caused the court more difficulty. During defense counsel's final argument, the trial court interrupted him to admonish him against comments which the court considered to be improper in the circumstances. It is necessary to an understanding of the issue that we repeat in its entirety the colloquy which then took place:

"MR. ATTENBOROUGH (DEFENSE COUNSEL): Even when he was in a prison cell, he wrote and put his return address. He's never tried to hurt anybody, and every time he's contacted the government, it has been to the very people who are charged with arresting people who do try to hurt somebody. So a reasonable person would not think—

THE COURT: Excuse me just a moment, Mr. Attenborough. That's improper, and I caution you not to do it again.

Ladies and gentlemen, the remark of counsel that it's the purpose of government to hurt people is improper.

Would you refrain from any such remarks? Do come forward.

*SIDEBAR CONFERENCE*

THE COURT: The government is not on trial, Mr. Attenborough.

MR. ATTENBOROUGH: You misheard me. I did not say that the government's job was to hurt people.

THE COURT: That's exactly what you said. Well, don't shake your head. You said it like it's the government who does hurt people.

MR. ATTENBOROUGH: I said it was the government's duty to—the government agencies who arrest people who are trying to hurt anyone.

THE COURT: Ms. Schwab, read what counsel said.

MR. ATTENBOROUGH: The argument doesn't matter now. I move for a mistrial. You have criticized me in front of the jury in the middle of my closing argument.

THE COURT: I certainly did.

MR. ATTENBOROUGH: You have undermined my credibility. You have deprived the defendant of a fair trial. He is entitled to a mistrial at this point.

THE COURT: Nonsense. You have no right to make such an argument.

MR. ATTENBOROUGH: Would you ask her to read it?

THE COURT: Read it, Ms. Schwab, would you?

(The record was read.)

MR. ATTENBOROUGH: You heard her read it. I said it's the agencies of the government's responsibility to arrest people who try to hurt other people.

THE COURT: Your language is highly inflammatory, Mr. Attenborough, and it is subject to the interpretation that I put upon it.

MR. ATTENBOROUGH: Would you ask her to read it again, Judge? I'm sure you'll be persuaded if you listen to this one sentence again.

THE COURT: I have heard what you said.

MR. ATTENBOROUGH: I didn't say the government was hurting anybody.

THE COURT: Go on with your final argument. Make no more comments like that.

MR. ATTENBOROUGH: I never made that in the first place, Judge.

*SIDEBAR CONFERENCE CONCLUDED*

(Transcript Day 3 of Trial, pp. 14–16)

Relying primarily upon *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir.1979), counsel for Mr. Smith urges strenuously that the cited language of the trial judge not only indicated outright bias on the part of the trial judge but so belittled defense counsel as to warrant a reversal and a new trial.

From our review of the entire record it is evident that the incident referred to was isolated and confined to that which has been recorded above. Further it is evident that, to the extent the trial judge's comments were otherwise objectionable, they were made in the main at the sidebar and therefore out of hearing of the jury. By the court reporter's characterization of the event, we have no reason to believe that the statements which occurred at the sidebar were actually heard by the jury and therefore its verdict could only have been improperly influenced, if at all, by the relatively brief colloquy which occurred in its presence. Viewed as such, we are unable to conclude that the trial judge's comments constituted error, much less error justifying reversal and new trial. It is evident from the record that a misunderstanding of what defense counsel had said or had inferred triggered the court's interruption and precautionary instruction. Crediting both the court and defense counsel with a fair understanding of what each thought he heard, the comments of Mr. Smith's counsel were ambiguous and were interpreted by the court in a manner which, if so construed, would have merited the admonition. As so interpreted, the trial court's precautionary admonition was within his discretion. Although an entirely different meaning may have been intended by defense counsel and may also have been actually conveyed to the jury, the comments of the trial judge actually made in the presence of the jury did not rise to that element of reversible error, especially since the record seems to have been singularly free of similar incidents elsewhere in the course of trial.

What defense counsel would have us believe, however, is that the statements made by the trial judge at the sidebar conference were not only improper but were also, to his client's prejudice, heard by the jury. In that presumption we may not indulge. Not having been present at the trial, we are unable to say what conduct beyond that reported, may have prompted the seemingly intemperate remarks of the trial court. A criminal jury trial is rarely if ever a perfect exercise in dispassionate logic and advocacy. It is an intensely human event, only imperfectly translated into the sterile medium of the written record. Without commenting further upon the exchange at the sidebar, it is sufficient to say that we are fully satisfied that the jury verdict was unaffected by it.

In the light of the above observations and because we further conclude that the trial was in all other respects fairly and impartially conducted, the judgment of the district court is AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, dissenting.

The district court in this case somehow understood defense counsel to say, during final arguments before the jury, that "the purpose of government is to hurt people". The district court then twice characterized this statement as "improper" and warned defense counsel "not to do it again." J.App. at 126. In my judgment, the remarks of the district court before the jury warrant reversal of this guilty verdict. Moreover, I would find that Smith's letter did not constitute a "true threat" to the safety of the President or Vice President. As a result, I respectfully dissent.

I

The obligation of a district judge to remain an impartial and unbiased observer is clear. Every defendant is entitled to expect that the judge will not act as an arm of the prosecution or become an adversary. Particularly when, as in this case, an indigent, unsympathetic defendant stands accused of a serious offense, a trial judge must maintain every appearance of impartiality. In this circuit, trial judges are required to avoid "even the appearance of judicial bias." *Anderson v. Sheppard*, 856 F.2d 741, 746 (6th Cir.1988). Because, in my view, the district court failed to meet this standard, I would reverse.

The fact that the offensive remarks may not have been representative of the district court's demeanor throughout the trial is not dispositive. Equally irrelevant is the proposition that the district court's statements were harmless error. In *Sheppard, supra*, we held that "the harmless error doctrine is inapplicable in cases where judicial bias and/or hostility is found to have been exhibited at any stage of a judicial proceeding." 856 F.2d at 746–47. The district court's unwarranted interruption of defense counsel's closing argument imputed an anti-government motive to the defense counsel which could have impacted considerably on a juror's deliberations, especially given the nature of the crime. As we have stated, "interference with the presentations of counsel has the potential of making a mockery of a defendant's right to a fair trial, even in the absence of open hostility." *United States v. Hickman*, 592 F.2d 931, 934 (6th Cir.1979). In addition, I fail to see how the district court's reading of boilerplate jury instructions stating that "this Court has no opinion as to the guilt or innocence of this defendant" remedies the judicial bias which had already infected the proceedings. This is another basis to reverse and remand for a new trial.

II

I recognize that the objective standard adopted in this circuit does not require proof of an actual, subjective intent to carry out a threat. Under *United States v. Vincent*, 681 F.2d 462 (6th Cir.1982), " 'a reasonable person' " must " 'foresee' " that the recipient would interpret the statement as " 'a serious expression of an intention to inflict bodily harm upon or to take the life of the President, and that the statement not be the result of mistake, duress, or coercion.' " *Id.* at 464 (citation omitted). In order to properly evaluate whether

Smith's statement meets *Vincent*, the complete statement must be examined:

> To Whom it May Concern
>
> Im fed up with President Bush. In is so call kinded gentler world but he isnt dont Anything for the American People who are poor, hungry and he doesnt want the average Joe on the street to get a minimum wage hike but he thinks he & Congress needs one hes full of Shit And I think Some one ought to Take him OUT AS IN "Death" but then we would be stuck with Quaye and god knows he isnt Any Count. I would like to kill Both of Them. Ask Secret Service About ME especially the ASS hole Agent in Miami Ron Collins we had a Run In in 1986 in Ft Lauderdale hes the one he fuck up my Life by lying To The Courts. I may be drinking Now but Im telling the Truth he And that Female bitch Assit US Attory karen what Ever Sent ME to Prison for no Reason—And They should And will pay if I have Anything To Do with it You can Take That to the bank. I Live here in The city now.
>
> Mike

The majority gives exceedingly short shrift to Smith's argument that this letter was insufficient as a matter of law to sustain a conviction under 18 U.S.C. § 871, which outlaws threats against certain federal officers made "knowingly and willfully". Closer examination of the factual record indicates to me that this case is far from clear-cut. First, the language of the letter is conditional—"Some one *ought* to Take him OUT" and "I *would like* to kill Both of Them." (Emphasis added.) In *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), the Supreme Court reversed a conviction under section 871 for making the statement "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." The Court held that the statement was not a true threat under section 871, in part, because of "the expressly conditional nature of the statement." *Id.* at 708, 89 S.Ct. at 1402. In the instant case, the purely conditional nature of the letter is augmented by the fact that the letter does not specify a time, date, or place. *United States v. Olson*, 629 F.Supp. 889, 894 (W.D. Mich.1986) (verbal statement not a true threat, in part, because "no specification of time, place or date.").

Second, Smith's letter contained several statements expressing political opinions. In *Watts*, the Supreme Court stated that section 871 cases must be evaluated " 'against the backdrop of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.' " 394 U.S. at 708, 89 S.Ct. at 1401 (citation omitted). Smith's crudely worded diatribe against the President expressed deep personal and political frustration. Before Smith is sent off to prison for nearly five years, I believe we are obligated to consider the letter as an impulsive statement of political alienation. However vituperative Smith's tone may have been, and in light of this country's commitment to free, frank, and unrestrained discussion of political issues, I cannot conclude that this letter constitutes an objective threat against our political leaders. *See also United States v. Olson*, 629 F.Supp. 889, 896 (W.D.Mich.1986) (granting motion to acquit because statement " 'I am threatening the life of the President today. I will take down any fed that comes to get me' " not true threat; listeners knew that defendant "had neither the means nor the intent to travel over 950 miles to Washington, D.C.").

Finally, as counsel for Smith admitted at oral argument, Smith is "a very sad figure" more in need of psychiatric counseling than a lengthy prison term. Although Smith's competency to stand trial was not at issue on appeal, I would regard his clouded mental and emotional state as bearing on our determination that the letter was an objective, true threat. Following his bumbling, almost comic, delivery of the letter to the federal building and swift apprehension, Smith made no verbal threats. He was urged by an interviewer to seek hospitalization. Furthermore, Smith initially maintained that his purpose

in writing the letter was to return to prison. Given these circumstances, along with the fact that the letter contains expressions of purely political opinion, I cannot conclude that the letter was a serious expression of an intent to harm the President or Vice President.

The evidence of a true threat to the two Assistant U.S. Attorneys in Florida is even more inconclusive. The letter only states that "They should And will pay". It appears clear to me that, as a matter of law, the charges relating to the federal prosecutors is totally without foundation. I would not find that Smith "knowingly and willfully" threatened any federal officials in violation of 18 U.S.C. § 871.

### III

In my view, the district court should have granted Smith's motion under Fed.R. Crim.P. 29 for a judgment of acquittal based on insufficiency of the evidence. Even if the district court correctly decided the Rule 29 motion, however, I believe that the district court's statements during defense counsel's closing argument were prejudicial and warrant a remand for a new trial. For the foregoing reasons, I dissent from the opinion of the majority.