UNITED STATES of America,
Plaintiff–Appellee,

v.

Peter SAUNDERS, Defendant–Appellant.

No. 98–1980.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 30, 1998.

Decided Feb. 2, 1999.

Madeleine S. Murphy (submitted), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Terence F. MacCarthy (submitted), Office of the Federal Defender Program, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Peter Saunders, an inmate at Stateville Correctional Center in Joliet, Illinois, sent a threatening letter to Judge Blanche Manning, a United States District Judge for the Northern District of Illinois; the next day, Mr. Saunders sent her an explosive device. Mr. Saunders admitted to an FBI agent that he had sent the letter and the bomb, and he even explained how he had obtained the components of the bomb. A jury found Mr. Saunders guilty of interfering with a federal officer in the execution of her duties, unlawful manufacture of a firearm, attempting to kill an officer or employee of the United States, and use of a firearm in relation to a crime of violence. Mr. Saunders now appeals his convictions. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. Facts

On October 30, 1995, Judge Blanche Manning's secretary opened a letter addressed to Judge Manning.[1] The return address named

---

1. The letter stated as follows:

Dear Mrs. Manning:

This letter is being written to find out what your [expletive] problem is. I just received your ruling on my suit 95 C 5452, Saunders vs. Prison Health Services, and I'm [expletive] off to say the least.

My criminal case should have been remanded for resentencing. But obviously you must not have taken anything into consideration because like a [expletive] you affirmed it. Now my suit comes in front of you and it's dismissed, and

your excuse is 28 USC Section 1915(d). It was never frivolous or malicious. I am and have been suffering because of the lack of medical treatment on my leg.

Now I have a judge that's jumped on the band wagon to say, [expletive] me. I know that you and Warner know each other from school or through your brother, and I think there is more to you denying all this than meets the eye. I have various people that have told me about you on a personal level. And believe me, I know more than you like.

Peter Saunders at the Stateville Correctional Center. This letter was turned over to a United States Deputy Marshal and submitted to the FBI.

The following day, October 31, 1995, as a Court Security Officer was screening a package addressed to Judge Manning in an X-ray machine in the United States Courthouse in Chicago, Illinois, he observed what appeared to be a D-sized battery, with two wires hooked to the battery at one end and a cylindrical tube at the other end, and two wires leading to a section of the package that was not visible. The courthouse area was sealed off, and the Court Security Officer called the Chicago bomb squad.

Detective Martin Gavin, an explosives technician with the Chicago Police Department, X-rayed the package again. Because the package had been handled through the mail, Detective Gavin was not concerned about detonation while handling the package. Based upon the X-ray and the detective's experience, Detective Gavin determined that the package was a victim-actuated device that would not detonate unless someone opened the package. Detective Gavin neutralized the device under safe conditions.

The debris of the disrupted device consisted of the outside wrapping of the package, a hollowed-out book, some tape, various wires, a battery and a Magic Marker vial containing match heads. Detective Gavin determined that the device was in fact a bomb, but was uncertain if the device actually would have detonated because at that time he was un-

sure if the battery was live. However, the battery was later tested and determined to be a live battery. Thus, Detective Gavin determined that the device was not a hoax and that the device would have exploded if opened.

An FBI agent interviewed Mr. Saunders at Stateville Correctional Center. Mr. Saunders explained that Judge Manning, as an Illinois Appellate Court judge, had affirmed his state criminal conviction and, as a federal judge, dismissed as frivolous Mr. Saunders' civil suit alleging that the State of Illinois was providing inadequate medical care to him. He stated that the disposition of his appeal and his civil suit made him furious with Judge Manning and that he had sent the letter and the bomb to Judge Manning. Mr. Saunders explained how he had obtained the components of the device and stated that he had hoped that the device would kill or injure Judge Manning. He also explained that he had been worried that someone other than Judge Manning might open the package and be injured. A review of the National Firearms Registry revealed that no weapons or devices had been registered by Mr. Saunders.

### B. Proceedings in the District Court

Prior to trial, Mr. Saunders moved in limine to redact the threatening letter at issue by removing offensive language and references to a prior act of violence, Mr. Saunders' stabbing a correctional officer. The district court denied Mr. Saunders' motion.[2]

---

If I ever get the chance to see daylight, I am going to eliminate your short, fat, ugly [expletive]. That's right, I will put a nine millimeter slug right in your head. If I can't do it myself, I promise I'll do my best to get a dope fiend who doesn't know any better to knock you off.

Since you denied my [expletive], I don't give a [expletive] attitude. I stabbed an officer, tried to kill his [expletive], in Joliet just because he [expletive] me off. And I only got a year for it. I like what the Unabomber stands for, and I understand that he has to conceal his identity to avoid prosecution. However, I have like, and I don't give a [expletive] who knows what I do. [Expletive], the next thing you could all give me is death, and that will be successfully seeing you go first.

Why is it that when someone is given a role of authority, she grows a [expletive] and wants to [expletive] everybody else? You're not alone.

All the others that deny cases and suits for valid issues need to be killed or dismembered. Warner is just like you. A [expletive] sucking fat white [expletive] to stay afloat. Well, I'm going to cut that [expletive] off so it goes down your throat and you choke.

[Expletive], you better remember me when you wake up, when you go to sleep and when you take a [expletive], because when you least expect it you will hear from me again. Have a [expletive] day.

/s/ Peter Saunders

Tr. at 221–23.

**2.** In denying Mr. Saunders' motion in limine, the district court found as follows:

[T]he court would not be able to keep the full meaning and intent of the letter by redaction or by substitution of other words. The court

The government also filed a motion in limine to prevent Mr. Saunders' cross-examination of Agent Robert Heckman regarding findings of an internal Department of Justice investigation of the FBI Laboratory. Agent Heckman, an explosives and hazardous devices examiner with the FBI laboratory materials and devices unit, was the government's expert witness on explosives and hazardous devices. Mr. Saunders was not permitted to cross-examine Agent Heckman concerning findings made by the Department of Justice Office of Inspector General following its investigation of the FBI Laboratory. Mr. Saunders maintained that the report would demonstrate that Mr. Heckman was biased in favor of the government and lacked expertise. The district court ruled that the use of the internal Office of Inspector General report to cross-examine the agent violated Rule 608(b) of the Federal Rules of Evidence, that the report's probative value was outweighed by its danger of undue prejudice, and that the report did not address Agent Heckman's performance in Mr. Saunders' case.

At trial, Agent Heckman testified that he had examined the X-ray of the device and the debris collected from the disruption of the device. He determined that all of the components necessary to create a destructive device were present in the X-ray and debris and that, if properly assembled and initiated, the device could explode and cause injury or death. The agent explained to the jury how the bomb operated and was constructed; according to him, the explosion would probably be more than that of a firecracker, but would not be very powerful. However, he noted that a firecracker can blow off a human hand and is potentially deadly. Using a video tape, Agent Heckman presented a device he constructed using components similar to those in Mr. Saunders' device and demonstrated the explosion it caused. Agent Heckman did not duplicate the exact device because he considered the fusing system in Mr. Saunders' bomb to be too dangerous and did not want to expose himself to possible injury or death. The one change to the device did not change the nature of the resulting explosion.

On October 31, 1997, Peter Saunders was found guilty by a jury of interfering with a federal officer in the execution of her duties, *see* 18 U.S.C. § 115(a)(1)(B); unlawful manufacture of a firearm, *see* 26 U.S.C. § 5861(f); attempting to kill an officer or employee of the United States, *see* 18 U.S.C. § 1114; and use of a firearm in relation to a crime of violence, *see* 18 U.S.C. § 924(c)(1). The district court denied Mr. Saunders' post-trial motion to vacate the verdict and order a new trial. The court sentenced Mr. Saunders to a term of imprisonment of 622 months to be served consecutively to his imprisonment on his state sentence and five years of supervised release. The court also ordered Mr. Saunders to pay a special assessment of $200 and a fine of $17,500.

---

will voir dire the jury regarding the language and ... give a limiting instruction, as I have indicated earlier, in this case. The court finds that it is probative to the defendant's intent to impede, intimidate or interfere with the victim. And also the effect that it had on the victim.... I am going to make a 404(b) finding that this attempting to kill the corrections officer, evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged. It goes to the purpose of intent to impede, intimidate or interfere with the victim in considering whether a reasonable person would interpret the statement as a serious expression of an intention to harm the victim.

Two, the other act is similar enough and close enough in time to be relevant to the matter in issue. Three, the court finds that there is—that the evidence is sufficient to support a jury finding that the defendant committed the similar act. And, four, the court has weighed the evidence and finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

Now with regards to the language in the case, the court will voir dire the jury and ask questions along racial lines. The court finds that it is material and relevant to the issues in this case and finds that the probative value would outweigh any prejudicial aspect.

The court finds that the language is probative of the defendant's intent to instill fear in the victim. The court further finds that removal of the language would unfairly diminish the probative value. Finally the court finds that the probative value outweighs the prejudicial value and also finds that it is important to determine if a reasonable person would interpret the letter as a serious expression of intent to inflict bodily harm on the victim. Tr. at 16–18.

## II

### DISCUSSION

On appeal, Mr. Saunders raises three issues. He contends (1) that the district court improperly denied his motion for judgment of acquittal or a new trial because the government failed to provide sufficient evidence from which a jury could find Mr. Saunders guilty as charged, (2) that the district court abused its discretion in denying Mr. Saunders' motion to redact portions of Mr. Saunders' letter to Judge Manning, and (3) that the district court abused its discretion by limiting the cross-examination of Agent Heckman. We shall address each of these contentions in turn.

### A. Sufficiency of the Evidence

■ Mr. Saunders first asserts that the government failed to provide sufficient evidence that he committed the four crimes of which he was convicted. We begin our review of the sufficiency of the evidence supporting Mr. Saunders' convictions with the well-settled standard that we must consider the evidence in the light most favorable to the government, making all reasonable inferences in its favor, and will affirm the conviction as long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. O'Brien*, 119 F.3d 523, 532 (7th Cir.1997). A court of appeals may reverse only when the "record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt." *United States v. Garcia*, 35 F.3d 1125, 1128 (7th Cir.1994) (quoting *United States v. Gutierrez*, 978 F.2d 1463, 1468–69 (7th Cir.1992)). Thus, Mr. Saunders faces an uphill battle in his sufficiency of the evidence challenge. We shall review Mr. Saunders' four convictions under this standard of review.

### 1.

■ Count One charged Mr. Saunders with threatening to kill Judge Manning on account of her official duties. *See* 18 U.S.C. § 115(a)(1)(B).[3] Mr. Saunders submits that the government failed to provide sufficient evidence that he threatened Judge Manning with the intent to interfere with the Judge's execution of her official duties. He also argues that the letter and device were used merely as a means of drawing attention to his lack of medical care provided by the Illinois State prison system. Mr. Saunders asserts that Judge Manning was merely a conduit through which Mr. Saunders could obtain the necessary attention to his cause.

■ In order to meet its burden on Count One, the government was required to show that Mr. Saunders knowingly threatened to kill Judge Manning and that he made the threat with the "intent to impede, intimidate or interfere with" the Judge while she was "engaged in the performance of [her] official duties," or with the "intent to retaliate against" her on account of the performance of her official duties. *See* 18 U.S.C. § 115(a)(1)(B). Whether the statement constitutes a threat was an issue of fact for the jury to decide. *See United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990); *see also United States v. Roberts*, 915 F.2d 889, 891 (4th Cir.1990), *cert. denied*, 498 U.S. 1122, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991). In *United States v. Pacione*, 950 F.2d 1348 (7th Cir.1991), *cert. denied*, 505 U.S. 1229, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992), we held that, in establishing that a threat was made in the context of § 115(a)(1)(B), the government must establish that the statement was made "in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates a statement as a serious expression of an intention to inflict bodily harm upon or to take the life of" another. *Id.* at 1355 (quoting *United States*

---

3. The statute provides in relevant part:
 Whoever— ... threatens to assault, kidnap, or murder, a United States official [or] a United States judge ... with intent to impede, intimidate, or interfere with such official [or] judge ... while engaged in the performance of offi-
 cial duties, or with intent to retaliate against such official [or] judge ... on the account of the performance of official duties, shall be punished ....
 18 U.S.C. § 115(a)(1)(B).

*v. Khorrami,*[4] 895 F.2d 1186, 1192 (7th Cir.), *cert. denied,* 498 U.S. 986, 111 S.Ct. 522, 112 L.Ed.2d 533 (1990)) (internal quotation marks omitted).[5]

■ This objective standard presented in *Khorrami* focuses on whether a reasonable speaker would foresee that the recipient of his words would take the statement seriously.[6] Although our circuit also treats as relevant evidence both the victim's response to a statement and the victim's belief that it was a threat,[7] in this case the government did not focus on the victim's conduct. Our focus,

---

4. In *Khorrami,* we affirmed a district court's judgment of conviction for mailing a threatening communication in violation of 18 U.S.C. § 876. *Khorrami* relied on cases involving threats upon the President, in violation of 18 U.S.C. § 871. *See United States v. Hoffman,* 806 F.2d 703 (7th Cir.1986), *cert. denied,* 481 U.S. 1005, 107 S.Ct. 1627, 95 L.Ed.2d 201 (1987); *Roy v. United States,* 416 F.2d 874 (9th Cir.1969). Cases reviewing similar threat statutes are instructive. In *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam), for example, the Supreme Court considered whether a statement made about President Lyndon B. Johnson was a true "threat" or a statement of political opposition. The Court examined the statement "If they [the draft board] ever make me carry a rifle the first man I want to get in my sights is L.B.J." in its context, considering the conditional nature of the comment and the reaction of the listeners, and concluded that it must be interpreted as "a very crude offensive method of stating a political opposition to the President" rather than a true threat. *Id.* at 708, 89 S.Ct. 1399.

5. *See also United States v. Hartbarger,* 148 F.3d 777, 782–83 (7th Cir.1998) (adopting *Khorrami* test for an allegation under 18 U.S.C. § 241), *cert. denied,* —— U.S. ——, 119 S.Ct. 1117, —— L.Ed.2d —— (1999).

6. Although the circuits agree that an objective test should be employed to determine whether a statement is a true threat, they disagree about whether the test should be speaker-based or listener-based: Should the inquiry be whether a reasonable person uttering the statement would foresee that the recipient would interpret the statement as a serious expression of an intent to harm, or should the inquiry be whether a reasonable person receiving the statement would interpret the statement as a serious expression of an intent to harm?

Those cases holding that the test should be an objective speaker-based one include *United States v. Schiefen,* 139 F.3d 638, 639 (8th Cir.1998) (per curiam) (concluding that a reasonable person would foresee that the recipient judge would perceive the language as a threat); *United States v. Fulmer,* 108 F.3d 1486, 1491–92 (1st Cir.1997) (discussing the two standards, collecting cases, concluding that "the appropriate focus is on what the defendant reasonably should have foreseen"); *United States v. Orozco–Santillan,* 903 F.2d 1262, 1265 (9th Cir.1990) (following speaker-based test); and *United States v. Welch,* 745 F.2d 614, 619 (10th Cir.1984) (same), *cert. de-*

*nied,* 470 U.S. 1006, 105 S.Ct. 1364, 84 L.Ed.2d 384 (1985). *See also United States v. Stevenson,* 126 F.3d 662, 664 (5th Cir.1997) (stating that the defendant must have communicated his threat intentionally); *United States v. Whiffen,* 121 F.3d 18, 21 (1st Cir.1997) (adopting this standard, as set forth in *Fulmer,* for interpretation of "threat" under 18 U.S.C. § 875).

Those cases treating the objective test as recipient-based include *United States v. Malik,* 16 F.3d 45, 48 (2d Cir.), *cert. denied,* 513 U.S. 968, 115 S.Ct. 435, 130 L.Ed.2d 347 (1994); and *United States v. Maisonet,* 484 F.2d 1356, 1358 (4th Cir.1973), *cert. denied,* 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974).

Notably, in *Fulmer,* the First Circuit explicitly chose to avoid "the perils that inhere in the 'reasonable-recipient standard,' namely that the jury will consider the unique sensitivity of the recipient" or that "a defendant may be convicted for making an ambiguous statement that the recipient may find threatening because of events not within the knowledge of the defendant," *Fulmer,* 108 F.3d at 1491, and focused instead on "what the defendant reasonably should have foreseen," *id.* at 1492.

7. In *United States v. Schneider,* 910 F.2d 1569 (7th Cir.1990), for example, in concluding that the language in a letter to the justices of the Supreme Court of Illinois was a threat, we focused on "whether the recipient could reasonably have regarded the defendant's statement as a threat." *Id.* at 1570. Recently, in *Hartbarger,* 148 F.3d at 782–83, a case involving racial threats under 18 U.S.C. § 241, we again adopted the *Khorrami* test for proving whether a true threat was made but clarified that the recipient's reaction to the alleged threat was relevant, as we found in *Schneider. See id.* at 784 ("[T]he evidence regarding the victims' reaction was relevant to the issue of whether the defendants intended to threaten the [victims] by burning a cross."). Other circuits also recognize the relevance of the addressee's response. *See, e.g., Fulmer,* 108 F.3d at 1500 ("[A]lthough the proper standard is what a person making the statement should have reasonably foreseen, we find that evidence of the recipient's reactions is relevant to that inquiry."); *United States v. Malik,* 16 F.3d 45, 49 (2d Cir.1994) (citing *United States v. Davis,* 876 F.2d 71, 73 (9th Cir.) (per curiam), *cert. denied,* 493 U.S. 866, 110 S.Ct. 188, 107 L.Ed.2d 143 (1989)); *United States v. Roberts,* 915 F.2d 889, 890–91 (4th Cir.1990). *But see* Recent Case, 111 Harv.L.Rev. 1110, 1112–14 (1998) (analyzing *United States v. Fulmer,* 108

therefore, is on whether a reasonable speaker or letter writer would have foreseen that the recipient of his letter would take the statements in it seriously or would believe them to be a threat.

■ Finally, we note that, at trial, the government was not required to prove that the defendant actually intended to carry out the threat. *See United States v. Smith*, 928 F.2d 740, 741 (6th Cir.), *cert. denied*, 502 U.S. 852, 112 S.Ct. 159, 116 L.Ed.2d 124 (1991); *Roberts*, 915 F.2d at 890. Furthermore, the government was not required to show that Mr. Saunders had the actual ability to carry out the threat. *See Khorrami*, 895 F.2d at 1192–93 (quoting *United States v. Hoffman*, 806 F.2d 703, 708 (7th Cir.1986), *cert. denied*, 481 U.S. 1005, 107 S.Ct. 1627, 95 L.Ed.2d 201 (1987)).

It is undisputed that Mr. Saunders wrote the letter to Judge Manning. The letter, as well as Mr. Saunders' statements to Agent Stiller, certainly could have been interpreted by the jury as a threat to kill Judge Manning because of the rulings she made in Mr. Saunders' cases. Mr. Saunders' letter clearly stated a desire to kill Judge Manning.[8] Furthermore, Mr. Saunders expressed an intent to kill Judge Manning when he stated that he hoped that the device would kill or injure the Judge. Thus, we conclude that a jury reasonably could have found the essential elements of this crime beyond a reasonable doubt.

### 2.

■ Mr. Saunders asserts that the government failed to prove in Count Two that he made a firearm and that he did so without having paid the required taxes on the firearm and without having filed a written application. According to Mr. Saunders, the government failed to prove that he made anything other than a crude device designed to be a hoax in order to gain attention to his cause.

■ Mr. Saunders was charged and convicted of violating 26 U.S.C. § 5861(f), which makes it unlawful "to make a firearm in violation of the provisions of this chapter." The definition of a "firearm" includes "a destructive device." *See* 26 U.S.C. § 5845(a); *see also United States v. Johnson*, 152 F.3d 618, 623 (7th Cir.1998). If the objective design of the device indicates that the object serves no legitimate social or commercial purpose, subjective intent is not relevant to the analysis. *See Johnson*, 152 F.3d at 628. However, if the assembled device or unassembled parts may form an object with both a legitimate and a nonlegitimate use, then subjective intent must also be shown. *See id.* Finally, a destructive device includes any explosive or weapon which will "expel a projectile by the action of an explosive or other propellant." *See* 26 U.S.C. § 5845(f).

At trial, Detective Gavin testified that he initially thought that the bomb could be a hoax because he was unsure whether the battery was live; it was later determined, however, that the battery was fully operable. The detective also found that all of the components necessary to make the device explode were present in the device. He therefore testified that he concluded that the device was not a hoax and that the device "would have gone as designed." Tr. at 281.

■ Mr. Saunders cites only one case to support his argument that the device was not a firearm. Although *United States v. Malone*, 546 F.2d 1182, 1184 (5th Cir.1977), holds that a grenade without an explosive could not be a destructive device, this case is inapposite to the circumstances here. Mr. Saunders' bomb did contain an explosive: the vial of incendiary match heads. Furthermore, a device need not be particularly sophisticated in order to be construed as a destructive device and may be a homemade device. *See, e.g., United States v. Copus*, 93

F.3d 1486 (1st Cir.1997), and commenting that the First Circuit had "embraced the best possible standard," namely the objective, speaker-based test, but criticizing it for "dilut[ing] its ... standard by allowing subjectivized evidence of the hearer's reaction").

8. Mr. Saunders stated in his letter to Judge Manning: "I am going to eliminate your short, fat, ugly [expletive]. That's right, I will put a nine millimeter slug right in your head.... [W]hen you least expect it, you will hear from mc again." Tr. at 222–23.

F.3d 269, 272 (7th Cir.1996) (finding that a device consisting of a sealed metal casing containing explosive powder and a fuse was a destructive device); *United States v. Tankersley*, 492 F.2d 962, 966 (7th Cir.1974) (finding that an unassembled device consisting of an M–80, a Pepsi bottle filled with paint remover and a rope fuse was a destructive device); *see also United States v. Hamrick*, 43 F.3d 877, 884 (4th Cir.) (en banc) (finding that a homemade mail bomb composed of a battery, some wires, three butane cigarette lighters, and a lip-balm-like substance used as a detonator was a destructive device), *cert. denied*, 516 U.S. 825, 116 S.Ct. 90, 133 L.Ed.2d 47 (1995).

The government provided sufficient evidence that Mr. Saunders knowingly and unlawfully made a destructive device and that he did so without filing a written application with the Secretary of the Treasury, without obtaining the approval of the Secretary and without paying the required taxes. The government introduced records of the Bureau of Alcohol, Tobacco and Firearms indicating that Mr. Saunders had neither registered the device nor paid any taxes on it. A rational jury clearly could have found that all of the elements of this crime were proved beyond a reasonable doubt.

### 3.

▮ Count Three of the indictment charged Mr. Saunders with attempting to kill a federal officer by sending Judge Manning a bomb.[9] Mr. Saunders asserts that the government failed to prove that he attempted to kill Judge Manning because it did not prove that he intended to commit the crime of killing Judge Manning while she was engaged in the performance of her official duties. Rather, Mr. Saunders contends, all that he intended was to bring attention to his plight by sending Judge Manning a hoax. He also submits that the government failed to show that he committed an act constituting a substantial step toward killing Judge Manning.

▮ The government was required to show that Mr. Saunders engaged in conduct with the intention of killing Judge Manning, that he engaged in conduct constituting a substantial step toward the attempted killing, and that the attempted killing took place while Judge Manning was engaged in or on account of the performance of her official duties. *See Braxton v. United States*, 500 U.S. 344, 349–50, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991) (interpreting 18 U.S.C. § 1114). As noted above, in the letter Mr. Saunders sent to Judge Manning and during his interview with Agent Stiller, Mr. Saunders made clear his intention to kill the Judge on account of her official duties. Mr. Saunders also took a substantial step in attempting to kill Judge Manning by sending a device that Mr. Saunders believed was operational because he told Agent Stiller he feared the bomb might injure someone other than Judge Manning. Agent Heckman testified at trial that the device included all of the components of a destructive device, and, if properly assembled and initiated, would explode and cause injury or death. Agent Heckman also testified that, although the explosion would not be very powerful, it would probably be more powerful than a firecracker that could blow off a human hand and was potentially deadly.

The Fourth Circuit's decision in *United States v. Hamrick*, 43 F.3d 877 (4th Cir.) (en banc), *cert. denied*, 516 U.S. 825, 116 S.Ct. 90, 133 L.Ed.2d 47 (1995), is instructive. In that case, a defendant who mailed a homemade bomb to an assistant United States attorney was charged with attempted murder. As a defense, the defendant argued that he intended only to show his displeasure with being prosecuted by sending the AUSA a joke bomb. The Fourth Circuit affirmed the jury conviction of attempted murder.[10]

---

9. Mr. Saunders was charged with violation of 18 U.S.C. § 1114, which provides:

Whoever kills or attempts to kill any officer or employee of the United States ... while such officer or employee is engaged in or on account of the performance of official duties ... shall be punished....

10. A panel of the court reversed Hamrick's conviction on 6 of the 8 counts; the counts of attempted murder and mailing of an unmailable article were upheld, however. When the case was reheard en banc, the Fourth Circuit affirmed all of Hamrick's convictions by an equally divided court. *See Hamrick*, 43 F.3d at 886.

It further determined that the evidence supported the conclusion that the defendant mailed the bomb with the intent that it would explode and kill the AUSA and that, even if the bomb had been inoperable, the evidence would have been sufficient to convict the defendant. *See id.* at 884–85.

 Finally, even if the device had not been sufficiently powerful to kill Judge Manning, or even if the device would not have exploded at all, Mr. Saunders still could be found guilty of attempted murder because factual impossibility is not a defense to a charge of attempted murder. *See United States v. Cotts*, 14 F.3d 300, 307 (7th Cir. 1994) (explaining that futile attempts that are factually impossible are attempts nonetheless). Thus, we conclude that a rational jury could have found the essential elements of the crime beyond a reasonable doubt.

### 4.

 Mr. Saunders maintains that the government did not meet its burden of proving, under Count Four, that Mr. Saunders used a destructive device in relation to a crime of violence. In order to meet its burden on Count Four, the government was required to show that Mr. Saunders was guilty of the attempted murder charged in Count Three and that he knowingly used the destructive device during and in relation to the attempted murder. *See* 18 U.S.C. § 924(c).[11] The evidence was more than sufficient to show that the device in question was a destructive device, as explained above, and was not a hoax because the testimony was unrefuted that the device was operable and that Mr. Saunders admitted his intentions. It is clear that Mr. Saunders "used" the device in the course of attempting to kill Judge Manning. *See United States v. Collins*, 109 F.3d 1413, 1419 (9th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 183, 139

L.Ed.2d 123 (1997) (holding that the mailing of a destructive device designed to explode upon opening constitutes "use" of a destructive device); *cf. United States v. Jones*, 124 F.3d 781, 784 (6th Cir.1997) (concluding there was sufficient evidence that defendant used a bomb while manufacturing marijuana in violation of § 924(c)); *United States v. Gonzalez*, 122 F.3d 1383, 1386 (11th Cir.1997) (concluding there was sufficient evidence that the destructive device in defendant's vehicle, a pipe bomb, was being used in relation to the assault on the United States Marshals, rather than being merely present, and was being carried because the defendant was reaching for it when the Marshals stopped his vehicle). Therefore, we determine that the record evidence reasonably supports a finding of guilt beyond a reasonable doubt.

### B. Denial of the Motion to Redact Portions of the Letter

 The district court admitted in evidence the letter Mr. Saunders sent to Judge Manning. Mr. Saunders submits that the district court abused its discretion by failing to redact prejudicial and offensive language from that letter. He maintains that the vulgar language and reference to a prior violent act were highly prejudicial and outweighed the probative value of the language. Mr. Saunders suggests that the act of stabbing the correctional officer was not directed to establishing a matter in issue because the stabbing was not similar to the mailing of a letter and package to the Judge, that the stabbing happened months before Mr. Saunders mailed the letter and package, and that the danger of unfair prejudice substantially outweighed the probative value of the evidence. For those reasons, asserts Mr. Saunders, the prejudicial language and reference should not have been admitted pursuant to Federal Rules of Evidence 403[12] and

---

11. Mr. Saunders was charged with the violation of 18 U.S.C. § 924(c)(1), which provides, in pertinent part:

 (c) Whoever—
 (1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States ...
 shall, in addition to the punishment provided for in the commission of such felony, be sen-

tenced to a term of imprisonment for not less than one year nor more than ten years.

12. Rule 403 provides:

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consid-

404(b).[13] Furthermore, Mr. Saunders relies on *United States v. Rivera*, 6 F.3d 431, 444 (7th Cir.1993), *cert. denied*, 510 U.S. 1130, 114 S.Ct. 1098, 127 L.Ed.2d 411 (1994), to suggest that the district court's questioning of the venire panel and the limiting jury instructions were insufficient to cure the prejudicial effect. Finally, Mr. Saunders maintains that redaction of the prejudicial language would not have damaged the probative value of the letter because the inflammatory language itself had no probative value.

The government takes the position that the district court correctly found that Mr. Saunders' choice of language was probative of his intent. The government maintains that the district court properly found that the jury needed to consider the entire letter in determining whether a reasonable person would interpret the letter as a serious expression of an intention to inflict bodily harm on the victim, and that the redaction would greatly diminish the probative value. Furthermore, the government points out that the district court correctly conducted a thorough voir dire concerning every obscenity, racial slur, and misogynistic reference and read a limiting instruction to the jury following the reading of the letter and at the close of the case. Finally, the government submits that the district court's approach was consistent with the Seventh Circuit's position on admission of offensive language as set forth in *United States v. Schweihs*, 971 F.2d 1302, 1313–15 (7th Cir.1992), and *United States v. Frasch*, 818 F.2d 631, 633 (7th Cir.1987) (upholding the district court's decision not to redact offensive language and references from the evidence in favor of careful voir dire of the jury panel and the use of limiting instructions).

A district court's ruling on admission of evidence under Federal Rules of Evidence 404(b) and 403 is reviewed for abuse of discretion. *See United States v. Sargent*, 98 F.3d 325, 328 (7th Cir.1996). We may reverse a district court's decision to admit evidence only when it is clear that the questioned evidence had no bearing on any of the issues involved in the trial. *See United States v. Lloyd*, 71 F.3d 1256, 1264 (7th Cir.1995), *cert. denied*, 517 U.S. 1249, 116 S.Ct. 2511, 135 L.Ed.2d 200 (1996). In reviewing a district court's balancing of probative value and unfair prejudice, our court will overturn a decision refusing redaction only if the district court either failed to exercise its discretion or exercised it in an unprincipled way. *See Schweihs*, 971 F.2d at 1314 (citing *Frasch*, 818 F.2d at 634).

Here, the district court carefully and explicitly implemented the four-step test for determining the admissibility of evidence under Rule 404(b) and balanced the probative value of the evidence against the danger of unfair prejudice under Rule 403. Furthermore, the district court specifically questioned the venire panel using the actual language and twice gave limiting instructions.

In our view, the letter's reference to the stabbing incident was properly submitted. The district court found that the derogatory language and the reference to the stabbing incident were probative of Mr. Saunders' intent to instill fear in his victim. The jury was entitled to evaluate whether Mr. Saunders' inclusion of this earlier incident in the letter was designed to ensure that this threat of harm to Judge Manning would be taken seriously. Furthermore, the district court reasonably determined that the stabbing incident, which allegedly happened in 1994, approximately 18 months prior to the threatening letter and mail bomb, was close enough in time to satisfy Rule 404(b).[14]

---

erations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed.R.Evid. 403.

13. Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed.R.Evid. 404(b).

14. *Cf. United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir.1996) (holding that evidence of a prior drug arrest 18 months earlier is sufficiently close in time for Rule 404(b) purposes); *United States v. Wimberly*, 60 F.3d 281, 285 (7th Cir. 1995) (admitting evidence of the admitted molestation of stepdaughter 13 years earlier where current charges concerned molestation of another stepdaughter), *cert. denied*, 516 U.S. 1063, 116 S.Ct. 744, 133 L.Ed.2d 693 (1996).

Finally, the district court gave a limiting instruction after the letter was read and again during jury instructions. We therefore must conclude that the district court did not abuse its discretion by admitting Mr. Saunders' letter to Judge Manning without redaction of the offensive language and the reference to the violent act. The district court appropriately exercised its discretion in a principled, methodical way and adhered to this court's standards for the admission of potentially prejudicial evidence.

### C. Limitation of Cross–Examination of Agent Heckman

▮▮ Mr. Saunders asserts that the district court erred by limiting his cross-examination of Agent Heckman. Mr. Saunders claims that he was denied his Sixth Amendment right to confront the witnesses against him. He maintains that he was not able to demonstrate Agent Heckman's bias and lack of expertise because the district court would not permit cross-examination concerning the report of the Department of Justice Office of Inspector General. Mr. Saunders supports his argument by explaining that Rule 607 of the Federal Rules of Evidence permits impeachment of a witness with respect to relationships and circumstances that impair the witness' impartiality.[15] Although Mr. Saunders recognizes that ordinarily it is not proper to impeach a witness with extrinsic evidence of prior instances of misconduct, he argues that this rule does not apply in excluding proof of conduct by a witness who possesses a specific bias for or against a party. In his own case, Mr. Saunders asserts, because Agent Heckman had been investigated in the past for bias in favor of the government, it would not be illogical that the agent would now be biased in favor of the government for fear of termination or discipline. Mr. Saunders points specifically to the report's findings that Agent Heckman had given slightly inaccurate testimony in one case and had made improper additions to a dictation by adding statements beyond his area of expertise in another case. These findings, he contends, make clear that Agent Heckman was untruthful.

▮▮ As a starting point to our analysis, we must acknowledge "the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Thus, even though the Sixth Amendment guarantees criminal defendants the right to cross-examine witnesses, the district court retains wide latitude in limiting the extent and scope of cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Whether the limitations on cross-examination are so severe as to amount to a violation of the Confrontation Clause is a question of law that we review de novo.[16] A succinct statement of overall approach was stated several years ago by Judge Selya of the First Circuit:

---

**15.** Federal Rule of Evidence 607 states:

The credibility of a witness may be attacked by any party, including the party calling the witness.

**16.** See *United States v. Given*, 164 F.3d 389, 391–92 (7th Cir.1999) ("Generally, abuse of discretion review applies to limitations placed on counsel's questioning, but when the limitations directly implicate the core values of the Sixth Amendment right to confrontation, review is de novo."); *United States v. Swanquist*, 161 F.3d 1064, 1073 (7th Cir.1998); *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1249, —— L.Ed.2d —— (1999); *United States v. Graffia*, 120 F.3d 706, 712 (7th Cir.1997); *United States v. Hernandez*, 84 F.3d 931, 933 (7th Cir.1996); *United States v. Sasson*, 62 F.3d 874, 882 (7th Cir.1995), *cert. denied*, 516 U.S. 1131, 116 S.Ct. 953, 133 L.Ed.2d 876 (1996); *United States v. Jackson*, 51 F.3d 646, 652 (7th Cir.1995); *United States v. Nelson*, 39 F.3d 705, 708 (7th Cir.1994); *United States v. Neely*, 980 F.2d 1074, 1080 (7th Cir.1992); *United States v. Saunders*, 973 F.2d 1354, 1358 (7th Cir.1992), *cert. denied*, 506 U.S. 1070, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993); *United States v. Abayomi*, 820 F.2d 902, 909 (7th Cir.), *cert. denied*, 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987). *Accord United States v. Bindley*, 157 F.3d 1235, 1240 (10th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1086, —— L.Ed.2d —— (1999); *United States v. James*, 139 F.3d 709, 713 (9th Cir.1998); *United States v. Laboy–Delgado*, 84 F.3d 22, 28 (1st Cir.1996).

When a witness' credibility is in issue, the trial court may impose limits on cross-examination as long as the court grants the defendant sufficient leeway to establish "a reasonably complete picture of the witness' veracity, bias, and motivation." *[United States v.] Boylan*, 898 F.2d [230, 254 (1st Cir.), *cert. denied*, 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990)]. If the trial court imposes such limitations and the defendant thereafter challenges them on appeal, we review the record de novo to ascertain whether the court, overall, gave the defendant a reasonable chance to develop the whole picture. *See United States v. Nelson*, 39 F.3d 705, 708 (7th Cir.1994). If we find that the core concerns of the Sixth Amendment have been satisfied, we "will grant relief from the shackling of cross-examination only for manifest abuse of discretion." *Boylan*, 898 F.2d at 254.

*United States v. Laboy–Delgado*, 84 F.3d 22, 28 (1st Cir.1996). The Supreme Court has said that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Van Arsdall*, 475 U.S. at 680, 106 S.Ct. 1431. We therefore have noted that the Supreme Court has "distinguished general attacks on the credibility of a witness from a particular attack on possible biases [and] held only the latter constitutionally impermissible." *Yancey v. Gilmore*, 113 F.3d 104, 108 (7th Cir.1997) (citing *Davis*, 415 U.S. at 316, 94 S.Ct. 1105). Our court recently set forth the factors to consider when determining whether a violation of the Sixth Amendment right of confrontation has occurred:

A criminal defendant has the right, as guaranteed by the Confrontation Clause of the Sixth Amendment, to "be confronted with the witnesses against him...." U.S. Const. Amend. VI. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). "[W]hen deciding whether limitations of cross-examination are permissible, courts have striven to distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion." *United States v. Nelson*, 39 F.3d 705, 708 (7th Cir.1994) (citation and internal quotations omitted). So long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised. *See Sasson*, 62 F.3d at 883. In determining whether the Sixth Amendment is implicated in a cross-examination denial, we focus on whether there was sufficient information presented to the jury for its appraisal of the witness. *See id.* at 882–83 (citation omitted).

*United States v. Scott*, 145 F.3d 878, 888 (7th Cir.1998).

Mr. Saunders asserts that he was denied his constitutionally protected right to impeach Agent Heckman for bias. Like the defendant in *United States v. Given*, 164 F.3d 389, 392–93 (7th Cir.1999), he argues that cross-examination for the purpose of exposing witness bias is at the core of the Sixth Amendment right to confrontation. With these principles set forth above to guide us, we begin consideration of his claim by examining the prohibited area of cross-examination, Mr. Saunders' use of a report made by the Department of Justice's Office of Inspector General. We note first that the report did not find that Agent Heckman had any bias in favor of the government. The report states that Agent Heckman was investigated for bias and was found not to be biased. The investigation did find that Agent Heckman once had supplemented a dictation and on another occasion had given a conclusion that could have been clearer and more complete. In our view, cross-examination on these matters possibly could have impacted on Agent Heckman's general credibility but would not have exposed a bias in favor of the government. After all, a report concluding that the agent was not biased simply cannot be probative of his bias. Mr. Saunders' counsel was not otherwise limited

in his cross-examination; he therefore had the opportunity to expose Agent Heckman's credibility, motives and biases. *See Scott*, 145 F.3d at 888 (holding that the Sixth Amendment was not compromised because the judge allowed cross-examination that revealed the witness' motives and biases). Therefore, the district court's decision to exclude the report does not implicate Mr. Saunders' Confrontation Clause rights. The appropriate standard of review is thus the abuse of discretion standard rather than the de novo standard.

 The district court, within its discretion, determined that the cross-examination into two specific incidents of conduct would have been of limited probative value. Although specific instances of conduct may, in the discretion of the court, be introduced for the purpose of attacking a witness' credibility, the probative value of such evidence must still outweigh the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Fed.R.Evid. 608(b).[17]

The determination of whether the probative value of evidence outweighs its risk of unfair prejudice is left to the discretion of the trial court, and when that discretion has been exercised, as it has been here, it will rarely be disturbed. *See United States v. Schweihs*, 971 F.2d 1302, 1313 (7th Cir.1992). Furthermore, district court judges retain wide latitude to impose reasonable limitations on cross-examination based on concerns about harassment, prejudice, confusion of the issues or interrogation that is only marginally relevant. *See United States v. Hernandez*, 84 F.3d 931, 934 (7th Cir.1996) (holding that past civil rights suit against officer was improper basis for cross-examination because cross-examination was intended only to attack officer's general credibility and competence as an agent).

In this case, the government correctly asserts that the allegation and findings were of minimal probative value because the investigation resulted only in a finding that, in other cases, Agent Heckman supplemented a dictation and presented a conclusion that could have been more thorough. The investigation pertained to an entirely different case and revealed no bias by Agent Heckman; it found that Agent Heckman's errors in two other cases were not willful and recommended no disciplinary action. The district court clearly acted within its discretion in determining that the report would have had limited probative value. The district court properly barred the use of the report pursuant to Federal Rule of Evidence 403, finding that the potential prejudice far outweighed the extremely limited probative value.

## Conclusion

We conclude that there was sufficient evidence introduced at trial for a jury to find Mr. Saunders guilty beyond a reasonable doubt on all counts. Furthermore, the trial court did not abuse its discretion in admitting Mr. Saunders' letter in its entirety. Nor did the court err in limiting Mr. Saunders' cross-examination of Agent Heckman. For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

17. Rule 608(b) provides:
(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, ... may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of a witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.